IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-1879 |
| | § | (CRIMINAL NO. H-11-292) |
| LEOPOLDO PEREZ ORTEGA, | § | |
| | § | |
| Defendant/Petitioner. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant-Petitioner Leopoldo Perez Ortega ("Perez") has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("§ 2255 Motion") (Docket Entry No. 47)[1] with an attached Memorandum Requesting This Court's Habeas Intervention & Evidentiary Hearing ("Memorandum in Support") (Docket Entry No. 47-1). Perez has also filed a Motion to Supplement His Section 2255 Petition ("Motion to Supplement") (Docket Entry No. 54). The United States has filed Government's Motion to Dismiss Movant's 28 U.S.C. § 2255 Motion ("Motion to Dismiss") (Docket Entry No. 53), to which Perez has filed Petitioner: Perez's Reply in Opposition to the Government's Motion to Dismiss Which Perez Received on September 25th, 2013 After Perez Sent Out His Motion to Supplement Under Rule 15 ("Reply") (Docket Entry No. 55). For the reasons explained below, the court will grant the United States' Motion to Dismiss.

---

[1]All docket entry references are to Criminal No. H-11-292.

## I.  Factual and Procedural Background

On June 6, 2011, Perez pleaded guilty to illegal reentry after conviction of an aggravated felony in violation of 18 U.S.C. § 1326(a) and (b)(2).[2]  At his rearraignment Perez admitted that on April 12, 1996, in the 260th District Court of Orange County, Texas, he was convicted of robbery.[3]  The court informed Perez of the maximum sentence that he would face if he pleaded guilty, including up to twenty years in prison.[4]  Perez was represented by attorney Gerry Montalvo before and during the rearraignment.[5]

The initial Presentence Investigation Report ("PSIR") (Docket Entry No. 18) concluded that Perez's base offense level under § 2L1.2(a) of the U.S. Sentencing Guidelines Manual ("Guidelines") was eight.[6]  The PSIR also included an eight-level specific offense characteristic increase.[7]  The government filed an objection to the eight-level increase, citing United States v. Santiesteban-Hernandez, 469 F.3d 376, 378-82 (5th Cir. 2006), abrogated by United States v.

---

[2]Transcript of Rearraignment on June 6, 2011, Before the Honorable Sim Lake, United States District Judge ("Rearraignment Transcript"), Docket Entry No. 37, p. 11:11-23; Judgment in a Criminal Case, United States v. Perez Ortega, No. 4:11-CR-00292-001, Docket Entry No. 24, p. 1.

[3]Rearraignment Transcript, Docket Entry No. 37, pp. 10:14-11:13.

[4]Id. at 7:21-8:3.

[5]Id. at 3:9-10.

[6]Government's Statement of Objection to the Presentence Report and Motion for Acceptance, Docket Entry No. 17, p. 1.

[7]Id.

Rodriguez, 711 F.3d 541 (5th Cir. 2013), for its argument that "[c]ontrolling Fifth Circuit precedent holds that a conviction for robbery under Texas law is a crime of violence meriting a 16 level enhancement under the guidelines."[8]   Perez's attorney filed a Statement of No Objection to the PSIR.[9]

At Perez's sentencing on August 25, 2011, the court noted that the government had filed an objection to the PSIR, which was accepted and included in the addendum to the PSIR, and that Perez's attorney had filed a statement of no objections to the report.[10] The court asked Perez whether he had read the PSIR before the sentencing date and discussed it with his attorney.[11]   Perez answered that he had.[12]   The court also asked Perez if he had any objections to the PSIR.[13]   Perez answered that he did not.[14]   The court then adopted the PSIR as revised, reflecting the sixteen-level enhancement under § 2L1.2(b)(1)(a)(ii) of the Guidelines.[15]

---

[8]Id.

[9]Defendant's Statement of No Objection to PSR, Docket Entry No. 16.

[10]Transcript of Sentencing on August 25, 2011, Before the Honorable Sim Lake, United States District Judge ("Sentencing Transcript"), Docket Entry No. 35, p. 2:18-21.

[11]Id. at 2:13-17.

[12]Id.

[13]Id. at 2:22-24.

[14]Id.

[15]Id. at 2:25; PSIR, Docket Entry No. 18, p. 4 ¶ 15.

The revised PSIR indicated a total offense level of twenty-one and a criminal history category of VI.[16] The advisory guideline range was seventy-seven to ninety-six months in custody.[17] The court sentenced Perez to ninety months in custody to be followed by three years of supervised release.[18]

On September 19, 2011, Perez filed a Motion for Leave to File Notice of Appeal[19] and a Notice of Appeal,[20] and his attorney filed a Motion to Withdraw as Attorney of Record and Motion for Appointment of Counsel and Motion to Seal ("Motion to Withdraw").[21] In his Motion to Withdraw, Montalvo indicated that Perez believed that he had received ineffective assistance of counsel.[22] Accordingly, Montalvo asked the court to appoint new counsel to represent Perez on appeal.[23] The court granted Montalvo's Motion to Withdraw and Perez's Motion for Leave to File Notice of Appeal.[24]

_____

[16]PSIR, Docket Entry No. 18, p. 8 ¶ 32; Sentencing Transcript, Docket Entry No. 35, p. 3:1-5.

[17]PSIR, Docket Entry No. 18, p. 11 ¶ 52; Sentencing Transcript, Docket Entry No. 35, p. 3:1-5.

[18]Sentencing Transcript, Docket Entry No. 35, p. 7:24-25.

[19]Defendant's Motion for Leave to File Notice of Appeal, Docket Entry No. 26.

[20]Defendant's Notice of Appeal, Docket Entry No. 27.

[21]Motion to Withdraw, Docket Entry No. 28.

[22]Id. at 2.

[23]Id. at 3.

[24]Order granting Motion for Leave to File Notice of Appeal, Docket Entry No. 30; Order granting Motion to Withdraw, Docket Entry No. 31.

The court appointed attorney Lee Wilson to represent Perez on appeal.[25]

On appeal, Perez's attorney filed a brief in accordance with Anders v. California, 87 S. Ct. 1396 (1967), and United States v. Flores, 632 F.3d 229 (5th Cir. 2011), and moved for leave to withdraw.[26] United States v. Perez Ortega, 471 F. App'x 381, 381-82 (5th Cir. 2012). Perez did not file a response.[27] Id. at 382. The Fifth Circuit reviewed the brief and the relevant portions of the record and determined that "the appeal presents no nonfrivolous issue for appellate review."[28] Id. The Fifth Circuit accordingly granted the motion for leave to withdraw and dismissed Perez's appeal as frivolous.[29] Id.

On June 14, 2013, Perez filed his § 2255 Motion and attached a Memorandum in Support.[30] On July 1, 2013, the court entered a Scheduling Order with regard to Perez's § 2255 Motion.[31]  On

---

[25]CJA 20 Appointment of and Authority to Pay Court-Appointed Counsel, Docket Entry No. 32.

[26]United States v. Perez Ortega, No. 11-20656 (5th Cir. June 19, 2012), Docket Entry No. 46-1.

[27]Id.

[28]Id.

[29]Id.; Judgment, United States v. Perez Ortega, No. 11-20656 (5th Cir. June 19, 2012), Docket Entry No. 46.

[30]§ 2255 Motion, Docket Entry No. 47; Memorandum in Support, Docket Entry No. 47-1. Although the district clerk stamped Perez's § 2255 Motion filed on June 24, 2013, "such a pro se motion is deemed filed at the time it is delivered to prison officials." United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000).

[31]Scheduling Order, Docket Entry No. 48.

July 11, 2013, the government filed a motion for an extension of time to respond to Perez's § 2255 Motion,[32] which the court granted.[33]  On September 20, 2013, the government filed its Motion to Dismiss.[34]  On September 24, 2013, Perez filed his Motion to Supplement his § 2255 Motion.[35]  On September 30, 2013, Perez filed his Reply to the government's Motion to Dismiss.[36]

## II.  § 2255 Standard of Review

A prisoner serving a sentence imposed by a federal court "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  If the court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

Only two types of claims may be raised in a § 2255 motion. See United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir.

---

[32]Government's Motion for a Forty-One Day Extension of Time to Respond to 28 U.S.C. § 2255 Motion, Docket Entry No. 51.

[33]Order, Docket Entry No. 52.

[34]Motion to Dismiss, Docket Entry No. 53.

[35]Motion to Supplement, Docket Entry No. 54.

[36]Reply, Docket Entry No. 55.

1998).   First, a § 2255 petitioner may raise a constitutional or jurisdictional claim.   <u>Id.</u>   If, however, the claim could have been raised on direct appeal, but was not, the petitioner must first show cause and prejudice.   <u>Id.</u>   Second, a § 2255 petitioner may assert any other type of claim that could not have been raised on direct appeal.   <u>Id.</u>   To obtain relief on this second type of claim the petitioner must show that allowing the asserted error to stand "would result in a complete miscarriage of justice."   <u>Id.</u>

A motion under § 2255 "may not do service for an appeal," however, and a § 2255 petitioner "must clear a significantly higher hurdle than would exist on direct appeal" in order to obtain relief.   <u>United States v. Frady</u>, 102 S. Ct. 1584, 1593 (1982).   Any issues that were raised and rejected on direct appeal may not be asserted in a § 2255 motion.   See <u>United States v. Webster</u>, 392 F.3d 787, 791 & n.5 (5th Cir. 2004).   Additionally, "[n]onconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a [§ 2255] proceeding." <u>United States v. Vaughn</u>, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

Mindful of Perez's <u>pro se</u> status, the court has liberally construed his § 2255 Motion and related filings.   See <u>Estelle v. Gamble</u>, 97 S. Ct. 285, 292 (1976) (holding that a "pro se document is to be liberally construed"); <u>Haines v. Kerner</u>, 92 S. Ct. 594, 596 (1972) (per curiam) (holding that <u>pro se</u> pleadings are held "to less stringent standards than formal pleadings drafted by

-7-

lawyers"). In his § 2255 Motion, Motion to Supplement, Memorandum
in Support, and Reply Perez argues that he received ineffective
assistance of counsel that caused him to enter his guilty plea
involuntarily and resulted in the miscalculation of his sentence
under the Guidelines.

### III.   Perez's Guilty Plea

In his Memorandum in Support, Perez argues that his guilty
plea was involuntary.[37]   Embedded in his argument that his Sixth
Amendment right to effective assistance of counsel was violated,
Perez makes the following arguments related to the voluntariness of
his guilty plea:

### Perez's Guilty Plea is Invalid

Perez's guilty plea was not voluntary, knowing, and
intelligent act done with sufficient awareness of the
relevant circumstances and likely consequences surround
the plea.  As Perez's counsel failed to follow the
mandate described in Padilla, supra, advising Perez of
the consequences of pleading guilty to his charge supra.
Thus, generating a core ineffective assistance of counsel
claim.  To be voluntary and knowing, (1) the guilty plea
must be free from coercion; (2) the defendant (Perez)
must understand the nature of the charges; (3) the
defendant (Perez) must know and understand the
consequences of his guilty plea.

### Perez has Proven Core Ineffective Assistance
### of Counsel Claims in Violations of the
### 6th Amendment with the Record

Perez has proven & demonstrated that: (1) that his
counsel's performance was deficient, and (2) a reasonable
probability that the deficient performance prejudiced the

---

[37]Memorandum in Support, Docket Entry No. 47-1, pp. 7-9.

defense of Perez.   The first prong of Strickland,
requires & Perez has proven that his Plea WAS NOT
voluntary because he received advice from counsel that
was NOT within the range of competence demanded of
attorneys in criminal cases, & failed to let Perez know
the consequences of his plea required under Padilla,
while the Second Prong requires & Perez has proven and
shown that there is both a reasonable & actual
probability that, but for counsel's errors, he would NOT
have received a 16 Offense Point Level enhancements and
he may have entered a different plea and may have elected
to go to trial.   Perez was in an untenable position to
plead guilty as his Sentencing Counsel improperly stated
to him he was facing a life sentence had he not taken the
plea.[38]

The court construes these paragraphs to allege that Perez's guilty

plea was involuntary because he received ineffective assistance of

counsel to the extent that (1) his attorney did not advise him that

he might be deported as a result of his plea and (2) his attorney

coerced him to plead guilty by stating that he would face a life

sentence if he did not so plead.

## A.   Applicable Law

"The longstanding test for determining the validity of a

guilty plea is 'whether the plea represents a voluntary and

intelligent choice among the alternative courses of action open to

the defendant.'"   Hill v. Lockhart, 106 S. Ct. 366, 369 (1985)

(quoting North Carolina v. Alford, 91 S. Ct. 160, 164 (1970)).

"Before deciding whether to plead guilty, a defendant is entitled

to 'the effective assistance of competent counsel.'"   Padilla v.

Kentucky, 130 S. Ct. 1473, 1480-81 (2010) (quoting McMann v.

---

[38]Id. (citations omitted).

Richardson, 90 S. Ct. 1441, 1449 (1970)).  However, "'[e]ven where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary.'"  DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994) (quoting United States v. Diaz, 733 F.2d 371, 376 (5th Cir. 1984)).

A petitioner asserting ineffective assistance of counsel must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).  "[T]he two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (quoting Hill, 106 S. Ct. at 370).  "The performance prong of Strickland requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'"  Id. (quoting Hill, 106 S. Ct. at 369).  "To establish Strickland prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. (quoting Strickland, 104 S. Ct. at 2068).

In the context of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 106 S. Ct. at 370.  "A reasonable probability is a

-10-

probability sufficient to undermine confidence in the outcome" of the proceeding. Strickland, 104 S. Ct. at 2068. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Harrington v. Richter, 131 S. Ct. 770, 792 (2011)), reh'g denied, 131 S. Ct. 2951 (2011).

The burden is on the defendant to affirmatively prove prejudice. Strickland, 104 S. Ct. at 2067. A defendant's mere allegations that he would have insisted on going to trial are insufficient. Joseph v. Butler, 838 F.2d 786, 791 (5th Cir. 1988). Thus, in order to determine if there is a substantial likelihood that the defendant would not have pleaded guilty but would have insisted on going to trial, the court looks to what the probable outcome at trial would have been. See Hill, 106 S. Ct. at 370-71; Mangum v. Hargett, 67 F.3d 80, 84 (5th Cir. 1995) ("Whether the petitioner is able to persuade [the court] that he was prejudiced depends partly on his chances for success at trial."); Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994) (declaring that the assessment of whether a petitioner would not have pleaded guilty but would have insisted on going to trial "will depend in part on a prediction of what the outcome of a trial might have been"). In Hill, the Supreme Court described the nature of the court's inquiry:

> In many guilty plea cases, the "prejudice" inquiry
> will closely resemble the inquiry engaged in by courts
> reviewing    ineffective-assistance    challenges    to

> convictions obtained through a trial. For example, where
> the alleged error of counsel is a failure to investigate
> or discover potentially exculpatory evidence, the
> determination whether the error "prejudiced" the defend-
> ant by causing him to plead guilty rather than go to
> trial will depend on the likelihood that discovery of the
> evidence would have led counsel to change his recom-
> mendation as to the plea. This assessment, in turn, will
> depend in large part on a prediction [of] whether the
> evidence likely would have changed the outcome of a
> trial. Similarly, where the alleged error of counsel is
> a failure to advise the defendant of a potential affirma-
> tive defense to the crime charged, the resolution of the
> "prejudice" inquiry will depend largely on whether the
> affirmative defense likely would have succeeded at trial.

Hill, 106 S. Ct. at 370-71. Furthermore, "these predictions of the outcome at a possible trial, where necessary, should be made objectively without regard for the 'idiosyncrasies of the particular decisionmaker.'" Id. at 371 (quoting Strickland, 104 S. Ct. at 2068).

"If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review." DeVille, 21 F.3d at 657 (quoting Frank v. Blackburn, 646 F.2d 873, 882 (5th Cir. 1980)). Furthermore, "[a] plea will be upheld if it is shown by the record, or the evidence adduced at an evidentiary hearing, that a defendant understood the charge and its consequences when he pled guilty." Id. at 657.

**B.    Perez's Padilla Argument**

Perez argues that his guilty plea was involuntary because his attorney did not advise him of the deportation consequences of his

guilty plea.[39]   Assuming without deciding that Perez's allegation is true, Perez has satisfied the performance prong of <u>Strickland</u>. <u>See</u> <u>Padilla</u>, 130 S. Ct. at 1483 (holding that a defendant's allegation that counsel failed to advise him of the immigration consequences of his guilty plea when those consequences were clear from the relevant statute "sufficiently alleged [a] constitutional deficiency to satisfy the first prong of <u>Strickland</u>").   Thus, whether Perez is entitled to relief "will depend on whether he can satisfy <u>Strickland</u>'s second prong, prejudice."  <u>Id.</u> at 1483-84.

    1.   <u>Perez was aware that he was subject to deportation.</u>

The record establishes that Perez was aware that he was subject to deportation.  First, at Perez's arraignment before the magistrate judge, the government stated that Immigration and Customs Enforcement (ICE) had a detainer on him.[40]   In addition, Perez's attorney stated that he "advised [Perez] that [he] had a right to a bail hearing" and "explained to [him] that there is an ICE detainer on [him], so even if this Court gave [him] a bond, [he] would still be in custody."[41]   The magistrate judge found that Perez presented a serious risk of flight and ordered that he be detained in marshal custody while his case was pending.[42]

---

    [39]Memorandum in Support, Docket Entry No. 47-1, pp. 7-8.

    [40]Transcript of Initial Appearance on April 19, 2011, Before the Honorable Nancy K. Johnson, United States Magistrate Judge ("Arraignment Transcript"), Docket Entry No. 57, p. 5:23-6:18.

    [41]<u>Id.</u> at 6:5-9.

    [42]<u>Id.</u> at 6:14-18.

Furthermore, at Perez's rearraignment the court specifically warned that he would be deported after serving his sentence.[43] The court stated that "the offense you're pleading guilty to is a felony.  That means you will be deported after you serve your sentence."[44] The court then asked Perez, "Do you understand that?"[45] Perez replied, "Yes, your Honor."[46]

"'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'" Cervantes, 132 F.3d at 1110 (quoting Blackledge v. Allison, 97 S. Ct. 1621, 1628-29 (1977)). Accordingly, "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." Id. (citing United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir. 1985)).

Perez stated under oath that he understood that he would be deported.[47]  To establish prejudice Perez must prove that but for his counsel's error, he would not have pleaded guilty but would have insisted on going to trial. Armstead, 37 F.3d at 207; see also United States v. Smith, 915 F.2d 959, 963 (5th Cir. 1990) (holding that a § 2255 petitioner "has the burden of proof and of

---

[43]Rearraignment Transcript, Docket Entry No. 37, p. 7:21-23.

[44]Id.

[45]Id. at 8:2.

[46]Id. at 8:3.

[47]Id. at 7:21-8:3.

-14-

persuasion to establish that a reasonable probability exists that but for his counsel's alleged failure to inform and misrepresentations he would not have pleaded guilty and would have insisted on going to trial"). Because Perez was informed of the deportation consequences of his guilty plea by the court, and swore under oath that he understood those consequences, he could not have been prejudiced by any alleged failure of his attorney in this regard. His claim for ineffective assistance of counsel regarding the deportation consequences of conviction is therefore without merit.

> 2. <u>Perez fails to allege that the outcome of the proceeding would have been different had his attorney advised him of the immigration consequences of his guilty plea.</u>

In the context of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 106 S. Ct. at 370. A defendant's mere allegations that he would have insisted on going to trial are insufficient. <u>Joseph</u>, 838 F.2d at 791. Perez, however, does not even allege that he would not have pleaded guilty and would have insisted on going to trial. Instead, Perez states that "but for counsel's errors, he would NOT have received a 16 Offense Point Level enhancements and he may have entered a different plea and may have elected to go to trial."[48] Because Perez has not proven that but for counsel's

---

[48]Memorandum in Support, Docket Entry No. 47-1, p. 9 ¶ [11].

-15-

errors he would have gone to trial, he has failed to allege that he was prejudiced by his counsel's alleged error.

3.   <u>Perez has not affirmatively proven a substantial likelihood that the outcome at trial would have been different.</u>

Even if Perez had unequivocally alleged that he would have gone to trial, such an allegation would be insufficient absent some indication that the outcome at trial would have been more favorable than the outcome of his guilty plea. See <u>United States v. Grammas</u>, 376 F.3d 433, 439 (5th Cir. 2004) (noting that the Fifth Circuit had "long recognized that to show prejudice, a defendant must demonstrate a reasonable probability that, but for his counsel's actions, he would have received a significantly less harsh sentence" and replacing the "significantly less harsh" standard with the "any amount of jail time" standard announced by the Supreme Court in <u>Glover v. United States</u>, 121 S. Ct. 696 (2001) (quoting <u>United States v. Ridgeway</u>, 321 F.3d 512, 515 (5th Cir. 2003) (internal quotation marks omitted)); <u>see also</u> <u>United States v. Rivas-Lopez</u>, 678 F.3d 353, 357 (5th Cir. 2012) ("Any amount of additional jail time is significant for purposes of showing prejudice."). Perez has not provided any argument or evidence that the outcome at trial would have been more favorable than the outcome of his guilty plea.

The evidence of guilt against Perez was strong. See <u>Armstead</u>, 37 F.3d at 210. At Perez's rearraignment the government recited

the facts that it would be prepared to prove at trial to establish Perez's guilt:

> [I]f this case were tried, the United States would prove that the Defendant is a citizen of Mexico and not of the United States.
>
> On April 12, 1996, Defendant was convicted in the 260th District Court of Orange County, Texas, for the offense of robbery.
>
> On February 28, 2006, Defendant was deported from the United States to Mexico.
>
> On July 22nd, 2009, Defendant was found in the United States at Huntsville, Texas.
>
> The Defendant did not obtain appropriate consent to reenter the United States and a fingerprint analyst examined and compared the fingerprints on the warrant of deportation and conviction documents to the known fingerprints of the Defendant and concluded they were made by the same individual.[49]

"[P]rior convictions are facts 'of the kind that generally can be clearly proved with relative ease [even] absent admission.'" Joseph, 838 F.2d at 791 (quoting Buckley v. Butler, 825 F.2d 895, 904 (5th Cir. 1987)).  Furthermore, given that the government had fingerprint evidence establishing each of the essential elements of the offense of illegal reentry, the evidence against Perez was overwhelming.

Given the overwhelming evidence against him, and his failure to provide any colorable argument that he might have received a lesser sentence had he gone to trial rather than pleaded guilty, even if Perez had unequivocally alleged that he would have gone to

---

[49]Rearraignment Transcript, Docket Entry No. 37, pp. 10:14-11:3.

trial, such an allegation would not be credible. Indeed, in light of the overwhelming evidence against him, Perez likely would have faced a harsher sentence had he gone to trial because he would not have been eligible for the three-point decrease in his criminal history category under § 3E1.1(a) and (b) of the Guidelines for early acceptance of responsibility.[50] See Grammas, 376 F.3d at 438-39. Because he pleaded guilty, Perez's guideline range was seventy-seven to ninety-six months.[51] Had he been convicted at trial, his guideline range likely would have been 100 to 125 months. See U.S. Sentencing Guidelines Manual ch. 5, pt. A (2010). Accordingly, Perez has not shown that he was prejudiced by his decision to plead guilty, even if his attorney failed to inform him of the deportation consequences of his guilty plea.

4.  **Perez's case is distinguishable from** *Padilla*.

Perez relies heavily on the Supreme Court's opinion in Padilla v. Kentucky for his argument that his attorney's alleged failure to inform him of the deportation consequences of his guilty plea rendered his counsel ineffective.[52] However, Padilla is not determinative on the issue of Perez's claim for ineffective assistance of counsel. In Padilla the Supreme Court held that an attorney's failure to advise his client of the immigration

---

[50]PSIR, Docket Entry No. 18, pp. 4-5 ¶ 20.

[51]Id. at 11 ¶ 52.

[52]§ 2255 Motion, Docket Entry No. 47, pp. 9, 12; Memorandum in Support, Docket Entry No. 47-1, pp. 7-9 ¶¶ [10]-[11].

consequences of his guilty plea satisfied the performance prong of the Strickland analysis, but remanded the case for consideration of whether it also satisfied the prejudice prong. Padilla, 130 S. Ct. at 1483-84, 1486-87. Accordingly, Perez must still affirmatively prove that his attorney's alleged failure to inform him of the immigration consequences of his guilty plea prejudiced his defense. As explained above, Perez has failed to affirmatively prove prejudice.

In addition, Perez's case is distinguishable from Padilla. In Padilla the defendant "ha[d] been a lawful permanent resident of the United States for more than 40 years." Id. at 1477. The Supreme Court "recognized that '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" Id. at 1483 (quoting I.N.S. v. St. Cyr, 121 S. Ct. 2271, 2291 (2001)). Furthermore, the Court noted that "Padilla's counsel could have easily determined that his plea would make him eligible for deportation." Id.

Here, Perez was in the country illegally and ICE had a detainer on him before he was arraigned.[53] Unlike the defendant in Padilla, Perez has not argued, nor has he provided any authority or produced any evidence to suggest, that he might have avoided deportation had he gone to trial rather than pleaded guilty. See Padilla v. Commonwealth, 381 S.W.3d 322, 330 (Ky. Ct. App. 2012).

─────────────

[53]Arraignment Transcript, Docket Entry No. 57, pp. 5:24-6:18.

Accordingly, Perez has not affirmatively proven that his attorney's alleged failure to advise him of the deportation consequences of his guilty plea prejudiced his defense.

## C.    Perez's Coercion Argument

Perez argues that he "was in an untenable position to plead guilty as his Sentencing Counsel improperly stated to him he was facing a life sentence had he not taken the plea."[54]  For the reasons explained below, Perez has failed to affirmatively prove that this alleged misrepresentation prejudiced his defense.

### 1.    Perez was aware that the maximum penalty that he faced for the crime of illegal reentry was twenty years in prison.

The record shows that Perez was informed of the maximum penalty for his offense at both his arraignment and his rearraignment.  At his arraignment the magistrate judge stated: "Mr. Perez Ortega, you are charged with illegally reentering the United States after you were convicted of an aggravated felony and then deported.  The penalty range that you face is up to 20 years in prison and up to a $250,000 fine.  Do you understand the charge?"[55]  Perez responded, "Yes, your Honor."[56]

---

[54]Memorandum in Support, Docket Entry No. 47-1, pp. 7-9 ¶¶ [10]-[11].

[55]Arraignment Transcript, Docket Entry No. 57, p. 4:16-21.

[56]Id. at 4:22.

At Perez's rearraignment, the court stated:

> [T]he offense you're pleading guilty to is a felony. That means you will be deported after you serve your sentence. The maximum sentence that you face, if you plead guilty, is 20 years in prison and a fine of $250,000 and three years of supervised release and a $100 special assessment. Do you understand that?[57]

Perez responded, "Yes, your Honor."[58]   Perez's "'[s]olemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'" Cervantes, 132 F.3d at 1110 (quoting Blackledge, 97 S. Ct. at 1628-29).  At his arraignment Perez was informed of the maximum prison sentence that he faced and chose to plead not guilty.[59] At his rearraignment he was again informed of the maximum penalty that he faced and chose to plead guilty.[60]  His claim that he "was in an untenable position to plead guilty as his Sentencing Counsel improperly stated to him he was facing a life sentence had he not taken the plea" is not credible.

Furthermore, at Perez's rearraignment the court asked him, "Has anyone threatened you or forced you to plead guilty?"[61]  Perez

---

[57]Rearraignment Transcript, Docket Entry No. 37, pp. 7:22-8:2.

[58]Id. at 8:3.

[59]Arraignment Transcript, Docket Entry No. 57, pp. 4:16-21, 6:24-7:1, 7:12-7:21.

[60]Rearraignment Transcript, Docket Entry No. 37, pp. 7:22-8:3, 11:11-13.

[61]Id. at 9:22-23.

responded, "No, your Honor."[62]   The court also asked, "Has anyone promised you what sentence you will receive if you plead guilty."[63] Perez responded, "No, your Honor."[64]   "[A]lthough [Perez's] prior attestation of voluntariness at the Rule 11 hearing may not be an absolute bar to his contentions here, it indeed imposes on him a 'heavy burden.'"   Diaz, 733 F.2d at 374 (quoting United States v. Nuckols, 606 F.2d 566, 569 (5th Cir. 1979)).   Perez has failed to carry that burden.   Given Perez's solemn declarations in open court, at both his arraignment and rearraignment, that he understood that the maximum penalty that he faced was twenty years in prison, and his declaration that he was not threatened or forced to plead guilty, or promised a particular sentence if he pleaded guilty, any claim that he was prejudiced by his attorney's allegedly inaccurate advice is without merit.

   2.   <u>Perez fails to allege that the outcome of the proceeding would have been different had his attorney correctly advised him of the maximum penalty that he faced had he not pleaded guilty.</u>

   As noted in § III.B.2 above, Perez does not even allege that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.   Instead, Perez states that "but for counsel's errors, he would NOT have received a 16 Offense Point Level enhancements and he may have entered a different plea

---

[62]<u>Id.</u> at 9:24.

[63]<u>Id.</u> at 9:25–10:1.

[64]<u>Id.</u> at 10:2.

and may have elected to go to trial."[65]   Because Perez has not

alleged that but for counsel's errors he would have gone to trial,

he has failed to allege that he was prejudiced by his counsel's

alleged error.

>    3.    <u>Perez has not affirmatively proven a substantial</u>
>          <u>likelihood that the outcome at trial would have been</u>
>          <u>different.</u>

As noted in § III.B.3 above, Perez likely would have been

subject to a longer sentence under the Guidelines had he gone to

trial than if he pleaded guilty.   Perez has not provided any

argument to suggest that but for counsel's error he would have

received a more favorable sentence.   See <u>Grammas</u>, 376 F.3d at

437-39.   Furthermore, Perez "has not shown that even in light of

the strong evidence against him, there is a reasonable probability

that he would not have plead[ed] guilty and that he would have

insisted on going to trial."   <u>Armstead</u>, 37 F.3d at 210.

Accordingly, Perez has failed to affirmatively prove that his

defense was prejudiced by his counsel's alleged error.

## IV.   <u>Calculation of Perez's Sentence</u>

The primary focus of Perez's § 2255 Motion, Motion to

Supplement, and Reply is the calculation of his sentence under the

Guidelines.   Specifically, Perez contests the sixteen-point Specific

Offense Characteristic resulting from his 1996 robbery conviction.[66]

---

[65]Memorandum in Support, Docket Entry No. 47-1, p. 9 ¶ [11].

[66]PSIR, Docket Entry No. 18, p. 4 ¶ 15; § 2255 Motion, Docket
Entry No. 47, pp. 9, 15-16; Memorandum in Support, Docket Entry
(continued...)

Perez argues that the court erred in allowing the sixteen-point Specific Offense Characteristic without proving his prior conviction beyond a reasonable doubt and that his 1996 robbery conviction was too old to be counted in calculating his criminal history category.[67]   Perez also argues that recent case law precludes the use of his prior robbery conviction as a sentencing factor and that he received ineffective assistance of counsel because his lawyers did not argue these issues at sentencing or raise them on appeal.[68]

It is well established that "[t]echnical application of the Sentencing Guidelines does not give rise to Constitutional issues." Cervantes, 132 F.3d at 1109 (citing Vaughn, 955 F.2d at 368). Accordingly, a "claim that the trial judge erred in calculating [a defendant's] sentence is not grounds for section 2255 relief." Id. Furthermore, none of Perez's arguments regarding the calculation of his sentence have any merit.

**A.   Perez's argument that his prior robbery conviction was too old to be used as a sentencing factor is without merit.**

Perez argues that his 1996 robbery conviction should not have been included in his criminal history calculation or used to

---

[66](...continued)
No. 47-1, pp. 2-4 ¶¶ [3]-[5], 8-10 ¶¶ [11]-[12]; Motion to Supplement, Docket Entry No. 54; Reply, Docket Entry No. 55.

[67]Memorandum in Support, Docket Entry No. 47-1, p. 3 ¶ [4]; Motion to Supplement, Docket Entry No. 54, pp. 1-5, ¶¶ [5]-[10].

[68]§ 2255 Motion, Docket Entry No. 47, pp. 8-9, 15-17, 19-20; Motion to Supplement, Docket Entry No. 54, pp. 5-6 ¶¶ [11]-[12].

enhance his specific offence characterization because it was over ten years old.[69]   Perez bases his argument on a portion of the colloquy at his sentencing:

> MR. MONTALVO:  Yes, Your Honor.
>
> These guidelines, as the Court knows, are tremendous, I mean these Immigration guidelines. If you have a felony, 16-level increase, that's -- under the fraud guidelines, you've got to steal a million dollars to get 16 levels.  I know that he's had a troubled past and he's had a lot of encounters with the law, but most of them have been misdemeanors.  His felonies are quite old, '96.
>
> In fact --
>
> THE COURT:  There's one that wasn't even counted. It would probably add as additional.  He has an old assault conviction that was too old to be counted.
>
> MR. MONTALVO:  It was not counted.  I believe that was a misdemeanor, though, Your Honor.  Not to correct the Court, but it was a misdemeanor.
>
> That was part of my point, is that had the indictment been charged three months later -- for instance, I think it was charged in March of -- what was it?
>
> MR. DONNELLY [the AUSA]:  April.
>
> MR. MONTALVO:  April.  Had it been charged just three months later, then that felony that he was deported wouldn't have counted because it would have been over ten years.  It was just shy of ten years, the way I counted. So, he would have had three points had we been here just three months later.  I just want the Court to consider that.
>
> In addition to that, there's a new guideline coming out at the end of this year -- it's been approved -- I think it's going to be approved by Congress -- is that if the felony is over ten years old --

---

[69]Memorandum in Support, Docket Entry No. 47-1, p. 3 ¶ [4]; Motion to Supplement, Docket Entry No. 54, pp. 1-5, ¶¶ [5]-[10]

THE COURT:  It wouldn't add three points.  He had the illegal reentry conviction.

MR. MONTALVO:  No, but I'm talking about his first felony, Your Honor.

THE COURT:  He had the assault conviction from '07.  He had this evading arrest conviction.  We have a lot more -- that's ten points right there.

MR. DONNELLY:  I think the 1996 conviction would still count, Your Honor, because the term of imprisonment stretched into the time period in which we're talking about.

MR. MONTALVO:  Well, I think this --

THE COURT:  Well, in any event, he's got a long --

MR. MONTALVO:  He does.  But I was just pointing out that the felony in '96, which stretched into 2001, March of 2001 when it was discharged, that would have been over ten years had we charged this indictment just a couple of months later; and that three points wouldn't have been counted.  That's all I'm saying.

And I think that the new amendments are going to say that if the felony is not counted, then it shouldn't be a 16.  I think they bumped it down to a negative.

THE COURT:  Would he still get a 16 in this?

MR. MONTALVO:  He would get -- well --

THE COURT:  For the illegal reentry? And for the assault, probably?

MR. MONTALVO:  Maybe, Your Honor.  But he would still be three points less on criminal history.  So, he might have been one over.  That's all I wanted to point out.[70]

Perez has seized on his attorney's assertion at his sentencing that "[h]ad [the indictment] been charged just three months later, then

---

[70]Sentencing Transcript, Docket Entry No. 35, pp. 4:18-6:24.

that felony that he was deported wouldn't have counted because it would have been over ten years," and now argues that because his arrest for the robbery occurred in January of 1996, rather than in April of 1996, and because he was credited for eighty-eight days of time served prior to sentencing, that the offense was actually over ten years old and should not have been counted in calculating his Guidelines range.[71]

Perez's arguments are misplaced.  Perez was sentenced to five years' imprisonment for his 1996 robbery conviction.[72]  He was paroled in January of 2001 and his sentence was discharged in March of 2001.[73]  Section 4A1.1(a) of the Sentencing Guidelines Manual states that in computing a defendant's criminal history level, "Add 3 points for each prior sentence of imprisonment exceeding one year and one month."[74]  Under § 4A1.2(e),

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.  Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

---

[71]Memorandum in Support, Docket Entry No. 47-1, p. 3 ¶ [4]; Motion to Supplement, Docket Entry No. 54, pp. 1-4 ¶¶ [5]-[6]; Reply, Docket Entry No. 55, pp. 1-6 ¶¶ [2]-[14].

[72]PSIR, Docket Entry No. 18, p. 6 ¶ 26; Judgment and Sentence, Exhibit to Motion to Supplement, Docket Entry No. 54.

[73]PSIR, Docket Entry No. 18, p. 6 ¶ 26.

[74]The 2010 version of the Guidelines was applicable at the time of Perez's sentencing.  PSIR, Docket Entry No. 18, p. 4 ¶ 13.

Thus, the applicable time period is fifteen years, and the applicable dates for determining that period are the period of incarceration and the date of commencement of the instant offense.

The Fifth Circuit has held that illegal reentry is a continuing offense. See, e.g., United States v. Vargas-Garcia, 434 F.3d 345, 351 (5th Cir. 2005) ("[S]ection 1326 sets forth a continuing offense . . . . [that] begins at the time the defendant illegally reenters the country and does not become complete unless or until the defendant is found by the INS in the United States.") (quoting United States v. Corro-Balbuena, 187 F.3d 483, 485 (5th Cir. 1999)). Perez admitted at his rearraignment that "[o]n July 22nd, 2009, [he] was found in the United States at Huntsville Texas."[75] Therefore, the date of commencement of the instant offense was prior to July 22, 2009. Under § 4A1.2(e) of the Guidelines any prior sentence exceeding thirteen months that was imposed, or resulted in imprisonment, within fifteen years of July 22, 2009, is properly included in Perez's criminal history. See United States v. Munoz-Garcia, No. 11-51278, 2013 WL 3239138, at *2 (5th Cir. Mar. 12, 2013) (per curiam); Vargas-Garcia, 434 F.3d at 351-52. Because Perez was both sentenced and incarcerated during this period, his 1996 robbery conviction was properly included in his criminal history calculation, and Perez's argument that it should not have been counted has no merit.

---

[75]Rearraignment Transcript, Docket Entry No. 37, p. 10:22-23.

-28-

**B.    Perez's burden of proof argument is without merit.**

Perez argues that his 1996 felony conviction should have been proven beyond a reasonable doubt, stating that he "received a 16 point level enhancements unlawfully & unconstitutionally which was not only inaccurate but also was not presented in [his] indictment & not proven beyond a reasonable doubt, violates the Fifth Amendment's Due Process & Sixth Amendment's Jury Trial Right, indictment & notice clauses within the 5th & 6th Amendments."[76] Perez further argues that "the government and the district court used [his April 1996 date of conviction] to substantially enhance [his] sentence by the mere preponderance of the evidence standard of proof, without fully investigating the facts."[77]

In addition to arguing that his 1996 felony conviction should have been proven beyond a reasonable doubt, Perez also argues that every offense constituting his criminal history should have been proven beyond a reasonable doubt as well.[78]  Perez argues that under Apprendi v. New Jersey, 120 S. Ct. 2348, 2352 (2000), "[a]ny facts that increases the prescribed -- range of penalties to which a criminal defendant is exposed are elements of the crime."[79]  He further argues that under Alleyne v. United States, 133 S. Ct. 2151

---

[76]Motion to Supplement, Docket Entry No. 54, p. 2 ¶ [5]; see also Reply, Docket Entry No. 55, p. 6 ¶¶ [11]-[14].

[77]Motion to Supplement, Docket Entry No. 54, pp. 1-2 ¶ [5].

[78]Id. at 4 ¶¶ [7]-[8].

[79]Id. at 5 ¶ [11].

(2013), "[a]ny fact that, by law, increases the penalty for a crime
is an 'element' that must be submitted to the jury and found beyond
a reasonable doubt."[80]

Perez's reliance on both cases is misplaced.  First, Apprendi
specifically states that "'under the Due Process Clause of the
Fifth Amendment and the notice and jury trial guarantees of the
Sixth Amendment, any fact (other than prior conviction) that
increases the maximum penalty for a crime must be charged in an
indictment, submitted to a jury, and proven beyond a reasonable
doubt.'"  Apprendi, 120 S. Ct. at 2355 (quoting Jones v.
United States, 119 S. Ct. 1215, 1224 n.6 (1999)).  All of the facts
that Perez alleges should have been submitted to a jury are prior
convictions.[81]

In Alleyne the Supreme Court expanded its holding in Apprendi
to require proof beyond a reasonable doubt for facts that increase
a mandatory minimum sentence.  Alleyne, 133 S. Ct. at 2158.
Because Perez's offense did not carry a mandatory minimum sentence,
Alleyne is inapplicable.  Notably, the Supreme Court specifically
stated that the holding in Alleyne "does not mean that any fact
that influences judicial discretion must be found by a jury."  Id.
at 2163.  Indeed, the Supreme Court has "long recognized that broad
sentencing discretion, informed by judicial factfinding, does not

---

[80]Id. at 6 ¶ 12.

[81]PSIR, Docket Entry No. 18, pp. 5-7 ¶¶ 25-29.

violate the Sixth Amendment" and noted in <u>Alleyne</u> that it is permissible "'for judges to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing a judgment <u>within the range</u> prescribed by statute.'" <u>Id.</u> (quoting <u>Apprendi</u>, 120 S. Ct. at 2358).

Furthermore, the Fifth Circuit has held that "[s]o long as the ultimate sentence remains within the statutory range, . . . <u>Apprendi</u> is not violated." <u>United States v. Greenough</u>, 669 F.3d 567, 572 (5th Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 255 (2012). Accordingly, the burden of proof for a prior conviction at sentencing is a preponderance of the evidence. <u>See</u> <u>United States v. Brooks</u>, 681 F.3d 678, 712 (5th Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 836 (2013), and <u>cert. denied</u>, 133 S. Ct. 837 (2013), and <u>cert. denied</u>, 133 S. Ct. 839 (2013); <u>see also</u> <u>United States v. Cabrera</u>, 288 F.3d 163, 173-74 (5th Cir. 2002) ("[A] district court may adopt the facts contained in a PSR without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable.").

Perez admitted the truth of the 1996 robbery conviction at his rearraignment.[82] At his sentencing, Perez admitted that he had done

---

[82]Rearraignment Transcript, Docket Entry No. 37, pp. 10:14-11:10.

all of the things listed in the PSIR.[83]   Because he received a
sentence within the statutory range, his claim that the court erred
in failing to submit the facts of his prior convictions to a jury
for proof beyond a reasonable doubt are without merit.

**C.   Perez's "Simmons III" and "Carachuri" arguments are without merit.**

Perez argues that "[t]he district court and government
committed reversible error by failing to preclude 8 offense level
points enhancements from [his] sentence, as required by Simmons III
like arguments and under USSG Amendment 742 'recency issue.'"[84]
Perez also argues that neither "[t]he court nor the government has
jurisdiction to use any non aggravating prior sentencing factors to
enhance [his] sentence.   Nor did the court or government can use
any hypothetical aggravating factors as described in Carachuri-
Rosendo v. Holder . . . ."[85]

With regard to Perez's "Amendment 742 'recency issue,'" it
appears that Perez is arguing that he should not have received a
two-point sentence enhancement under § 4A1.1(e) of the 2009 version
of the Guidelines.   However, the 2010 version of the Guidelines was
used to determine Perez's sentencing range, and no such points were

---

[83]Sentencing Transcript, Docket Entry No. 35, pp. 2:22-24,
3:9-14.

[84]§ 2255 Motion, Docket Entry No. 47, p. 15; <u>see also</u>
Memorandum in Support, Docket Entry No. 47-1, p. 5.

[85]§ 2255 Motion, Docket Entry No. 47, p. 16.

included.[86]   Rather, Perez received two points under § 4A1.1(d) because he was found in the United States while in custody in Huntsville, Texas, for a separate offense.[87]   See United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996).

Perez's "Simmons III" and "Carachuri" arguments are based on Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010), and United States v. Simmons, 649 F.3d 237 (4th Cir. 2011).   Perez alleges that "[i]n Carachuri, the Supreme Court held that second or subsequent simple possession offenses or misdemeanor felonies ARE NOT aggravated felonies for purposes of removal proceedings where the state conviction was NOT based on the fact of a prior conviction."[88]   He argues that "[t]he district court committed reversible error by adopting the PSI/PSR Report, where 16 Offense Point Level Enhancements were unlawfully applied to [his] sentence assessed for and using non-aggravating felonies & convictions, in violations of [his] due Process under the 5th Amendment and Simmons III."[89]

Neither Carachuri-Rosendo nor Simmons is applicable to Perez's case.   In Carachuri-Rosendo the defendant had committed two mis-demeanor drug possession offenses in Texas.   Carachuri-Rosendo, 130 S. Ct. at 2580.   For the first offense he was sentenced to twenty

---

[86]PSIR, Docket Entry No. 18, p. 4 ¶ 13.

[87]Id. at 8 ¶ 31.

[88]Memorandum in Support, Docket Entry No. 47-1, p. 5 ¶ [8].

[89]Id. at 6 ¶ [8].

days in jail. Id. For the second he was sentenced to ten days in jail. Id. The government sought an enhanced penalty in a subsequent case based on the theory that had the defendant been prosecuted in federal court rather than state court for his second offense, he could have been prosecuted as a felon and received a two-year sentence. Id. at 2582. The Court rejected this theory, which it noted "would treat all 'conduct punishable as a felony' as the equivalent of a 'conviction' of a felony whenever, hypothetically speaking, the underlying conduct could have received felony treatment under federal law." Id. at 2586. Here, Perez was sentenced to five years in custody for his 1996 robbery.[90] His state-court felony conviction thus qualified as a felony under federal law. See 18 U.S.C. § 3559. Accordingly, Carachuri-Rosendo is inapplicable and Perez's argument that the court erred in adopting the PSIR on this basis is without merit.

Likewise, in Simmons the government sought an enhanced sentence based on the defendant's prior state conviction for marijuana possession, a conviction for which he faced no possibility of imprisonment under state law. Simmons, 649 F.3d at 239. Under the relevant North Carolina statute a defendant could receive more than one year in prison only if the State proved the existence of certain aggravating factors or demonstrated that the defendant had a criminal history. Id. at 240-41. If the State

---

[90]PSIR, Docket Entry No. 18, p. 6 ¶ 26; Judgment and Sentence, Exhibit to Motion to Supplement, Docket Entry No. 54.

failed to make such a showing, however, a defendant could never receive more than one year's imprisonment. Id. at 241. In light of the Supreme Court's holding in Carachuri-Rosendo, the Fourth Circuit held that in determining whether the defendant had been convicted of an aggravated felony the court must look to whether the State had made the requisite showing for a sentence exceeding one year. Id. at 247-50. Because Perez's 1996 felony conviction actually resulted in a sentence of over one year, Simmons is inapplicable and his claims regarding "Simmons III like arguments" are without merit.

**D.   Perez's ineffective assistance of counsel arguments based on the foregoing are without merit.**

Perez argues that both his sentencing and appeals counsel were ineffective for failing to raise the above arguments regarding the calculation of his guidelines range.[91]   Because none of his arguments have any merit, his counsel was not ineffective for failing to raise them. See, e.g., Turner v. Quarterman, 481 F.3d 292, 298 (5th Cir. 2007) ("[C]ounsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless."); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

---

[91]§ 2255 Motion, Docket Entry No. 47, pp. 17, 19-20; Memorandum in Support, Docket Entry No. 47-1, pp. 1-5 ¶¶ [3]-[7], 9-10 ¶ [12].

**E.    Perez's claim of actual innocence regarding his 1996 robbery conviction is not credible.**

Perez argues in his Memorandum in Support of his § 2255 Motion that he "was actually, factually and legally innocent of the 16 Offense Point Level enhancements and his specifically described predicate prior violent conviction, which he also has proven."[92] This bald assertion is belied by the record.   Perez admitted the truth of his 1996 felony conviction at his rearraignment.[93] He also admitted its truth at his sentencing.[94]   "'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'" Cervantes, 132 F.3d at 1110 (quoting Blackledge, 97 S. Ct. at 1628-29).   Accordingly, Perez's bald assertion is not credible and his claim is without merit.   See Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

---

[92]Memorandum in Support, Docket Entry 47-1, p. 9 ¶ [12].

[93]Rearraignment Transcript, Docket Entry No. 37, pp. 10:14-11:10.

[94]Sentencing Transcript, Docket Entry No. 35, pp. 2:22-24, 3:9-14.

### V.  Perez's Other Claims for Ineffective Assistance of Counsel

Perez also argues that both his sentencing and appeals counsel were ineffective for reasons unrelated to the voluntariness of his guilty plea or the calculation of his Guidelines range. Specifically, Perez makes the following arguments:

> Perez was denied his 6th Amendment Right for Effective Assistance of Counsel, where his lawyer failed to:
>
> > (a)  review and/or provide disclosure of all exculpatory material evidence within 14 days of Perez's arraignment, as the government failed to hand over the exculpatory evidence to the defense/Perez within 14 days of his arraignment;
> >
> > (b)  preserve & raise a Simmons III like argument at Sentencing by Sentencing Counsel Gerardo S. Montalvo & [on Direct Appeal] Direct Appeal Counsel Mr. Lee Wilson;
> >
> > (c)  [] raise a Padilla issue.  See Padilla v. Kentucky, [559 U.S. 356, 130 S.Ct. 1473, 1484-85, 87CrL 3 (2010)], Padilla, 130 S.Ct. at 1481] by Sentencing Counsel [Montalvo] & Appeals Court Counsel [Wilson];
> >
> > (d)  review and/or provide movant Perez with all discovery;
> >
> > (e)  file motions ordering the government to disclose all egregious governmental misconduct concerning Perez's sentencing factors;
> >
> > (f)  require the government to turn over all documents proving Perez's actual, factual & legal innocence of the 16 point offense level unlawful enhancements applied to Perez's sentence;
> >
> > (g)  seek enforcement of the government's ongoing obligation to turn over all exculpatory material Brady, Giles & Giglio

evidence before the pleas and then before sentencing.[95]

For the reasons explained in § III.B above, Perez's argument that he received ineffective assistance of counsel because his counsel failed to "raise a Padilla issue" is without merit. In addition, for the reasons explained in § IV.C above, Perez's argument that he received ineffective assistance of counsel because his counsel failed to "preserve & raise a Simmons III like argument at Sentencing . . . & on Direct Appeal" is also without merit. Furthermore, by entering a valid guilty plea, Perez waived all nonjurisdictional defects to his conviction, including any claim for ineffective assistance of counsel that is not related to the voluntariness of his guilty plea. United States v. Cavitt, 550 F.3d 430, 441 (5th Cir. 2008); United States v. Diaz, 733 F.2d 371, 376 (5th Cir. 1984). Nonetheless, the court finds that none of Perez's arguments have any merit.

First, Perez argues that his lawyers failed to "review and/or provide disclosure of all exculpatory material evidence within 14 days of Perez's arraignment."[96] However, Perez provides nothing supporting the existence of any exculpatory material. His bald assertion that his counsel failed to review or provide disclosure of such material is thus without merit. See Ross, 694 F.2d at 1011.

---

[95]§ 2255 Motion, Docket Entry No. 47, pp. 8-9; Memorandum in Support, Docket No. 47-1, pp. 4-5 ¶ [7].

[96]§ 2255 Motion, Docket Entry No. 47, p. 8; Memorandum in Support, Docket Entry No. 47-1, p. 4 ¶ [7].

Second, Perez argues that his lawyers failed to "review and or provide [him] with all discovery."[97]  However, Perez "does not demonstrate what counsel would have discovered . . . [n]or does [he] demonstrate a reasonable probability that discovery of any such information would have altered the outcome at trial." Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009).  This conclusory allegation is insufficient to raise an issue of ineffective assistance of counsel.  Perez's "claim of prejudice is thus inadequate as conclusory." Id.; see also Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

Third, Perez argues that his lawyers failed to "file motions ordering the government to disclose all egregious governmental misconduct concerning Perez's sentencing factors."[98]  However, Perez does not provide any evidence to support his allegation of misconduct.  Accordingly, his counsel was not ineffective for failing to file meritless motions. See, e.g., Turner, 481 F.3d at 298; Clark, 19 F.3d at 966.  Perez's claim for ineffective assistance of counsel for failure to file such motions is therefore without merit.

---

[97]§ 2255 Motion, Docket Entry No. 47, p. 9, Memorandum in Support, Docket Entry No. 47-1, p. 5 ¶ [7].

[98]Id.

-39-

Fourth, Perez argues that his lawyers failed to "require the government to turn over all documents proving Perez's actual, factual & legal innocence of the 16 points Offense Level unlawful enhancements applied to Perez's sentence."[99]  However, he provides nothing to suggest that any such documents actually exist.  Indeed, Perez admitted the truth of his 1996 robbery conviction at both his rearraignment and his sentencing.[100]  Furthermore, "prior convictions are facts 'of the kind that generally can be clearly proved with relative ease [even] absent admission.'"  Joseph, 838 F.2d at 791 (quoting Buckley, 825 F.2d at 904).  Perez's claim for ineffective assistance of counsel in this regard is therefore without merit.

Finally, Perez argues that his lawyers failed to "seek enforcement of the government's ongoing obligation to turn over all exculpatory material Brady, Giles & Giglio evidence before the pleas and then before sentencing."[101]  However, as noted above, Perez does not even allege that any such evidence exists, nor has he provided any evidence to suggest that such material exists.  Perez has therefore failed to affirmatively prove either prong of the Strickland analysis, and his argument for ineffective

---

[99]Id.

[100]Rearraignment Transcript, Docket Entry No. 37, pp. 10:14–11:10; Sentencing Transcript, Docket Entry No. 35, pp. 2:22–24, 3:9–14.

[101]§ 2255 Motion, Docket Entry No. 47, p. 9, Memorandum in Support, Docket Entry No. 47-1, p. 5 ¶ [7].

assistance of counsel is without merit.   See Day, 566 F.3d at
540-41; Miller, 200 F.3d at 282; Ross, 694 F.2d at 1011.

### VI.   **Evidentiary Hearing**

Perez has requested an evidentiary hearing.[102]   "The question
whether an evidentiary hearing is necessary . . . depends on an
assessment of the record." Smith, 915 F.2d at 964.   "If the record
is clearly adequate to dispose fairly of the allegations, the court
need inquire no further." Id.   Furthermore, "[a] hearing is
unnecessary when the petitioner's allegations are 'inconsistent
with his conduct' and when he does not offer 'detailed and specific
facts' surrounding his allegations." Id. (citing Davis v. Butler,
825 F.2d 892, 894 (5th Cir. 1987)).   Because the record
conclusively shows that Perez is not entitled to relief, the court
will deny his request for an evidentiary hearing.

### VII.   **Conclusion and Order**

For the reasons explained above, the court concludes that
Perez has not established that he is entitled to relief on any of
the grounds he alleges.   Accordingly, Perez's Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person
in Federal Custody (Docket Entry No. 47); Affidavit of:
Leopoldo Perez Ortega Via: Fed.R.Civ.P. 56(f) in Support of His

---

[102]§ 2255 Motion, Docket Entry No. 47, p. 24; Memorandum in
Support, Docket Entry No. 47-1, p. 10 ¶ [13].

Motion Under 28 U.S.C. § 2255 Petition & Memorandum Requesting This Court's Habeas Intervention & Evidentiary Hearing (Docket Entry No. 47-1); Petitioner: Perez's Motion to Supplement His Section 2255 Petition Under Fed.R.Civ.P. Rule 15 with Alleyne v. United States, 93 CrL 389 (U.S. 2013); Alleyne v. United States, 133 S.Ct. 2151 (2013) and Other Issues (Docket Entry No. 54); and Petitioner: Perez's Reply in Opposition to the Government's Motion to Dismiss Which Perez Received on September 25th, 2013 After Perez Sent Out His Motion to Supplement Under Rule 15 (Docket Entry No. 55) are **DENIED**.  The Government's Motion to Dismiss Movant's 28 U.S.C. § 2255 Motion (Docket Entry No. 53) is **GRANTED**.

     **SIGNED** at Houston, Texas, on this 12th day of November, 2013.

SIM LAKE
UNITED STATES DISTRICT JUDGE